UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

Jessica Hill,

               Petitioner,

vs.                          Case No.  2:06-cv-277-FtM-29DNF

Secretary, Florida Department of
Corrections,

               Respondent.

_____

**OPINION AND ORDER**

Petitioner Jessica Hill (hereinafter "Hill" or "Petitioner") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1, Petition) pursuant to 28 U.S.C. § 2254 on May 31, 2006[1] challenging her plea-based conviction for first degree murder and armed robbery for which she was sentenced to life imprisonment. Respondent filed a Response (Doc. #10, Response) to the Petition, and exhibits in support thereof (Exhs. 1-16). See Doc. #11, Respondent's Notice of Filing Exhibits (exhibits not scanned). Petitioner filed a Reply to the Response (Doc. #13, Reply) and also attached exhibits (Doc. #14, Pet's Appendix A-C). Petitioner argues that her attorney provided ineffective assistance in

_____

[1]The Petition (Doc. #1) was docketed and filed in this Court on June 5, 2006. The Court, however, applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

connection with her advice to plead guilty, and that this rendered the guilty plea unknowing and involuntary.

## I.

The procedural history of this case is set forth in the two volume record on appeal submitted by the State (Exh. #1, Vol. I and Vol. II), which includes the April 15, 2003 guilty plea transcript and the May 28, 2003 sentencing transcript.

On December 5, 2001, Hill was arrested and charged by information with Second Degree Murder With a Firearm and Robbery-Possessing a Firearm. Exh. 1, Vol I at 1-3. The Public Defender was appointed to represent Hill. Id. at 12. On December 21, 2001, Hill, represented by Assistant Public Defender, Kathleen M. Bowden, entered a Written Plea of Not Guilty to the charges. Id. at 16.

On April 10, 2002, Hill was indicted, along with two co-defendants, for First Degree Murder and Robbery-Possessing a Firearm. Id. at 17-18. On August 19, 2002, the state court granted defense counsel's request for the appointment of a mental health expert. Id. at 22. On April 10, 2003, the State filed a Notice of Intent to Seek Death Penalty against Hill. Id. at 24. On April 14, 2003, Counsel for Petitioner filed a Motion to Strike the State's Notice of Intent to Seek Death Penalty. Id. at 25. Counsel argued that, under State law, a notice of intent to seek the death penalty had to be filed within 45 days of the Indictment

in order to obtain the benefits of Florida Rule of Criminal Procedure 3.202 regarding mental health issues.[2]

On April 15, 2003, Hill entered a negotiated *nolo contendere* plea to the offenses charged in the Indictment. Petitioner agreed to a term of life imprisonment in exchange for the State's agreement not to seek the death penalty. Exh. 1, Vol. II at 27-30. In her executed plea agreement, Hill did not reserve any matters for appeal. Id. at 27, ¶3.

At the change of plea hearing, the prosecutor advised the state court judge that Petitioner had been indicted on one count of first degree murder and one count of robbery with a firearm, and that the State had filed a notice of intent to seek the death penalty, but had offered a plea wherein the State would not seek the death penalty but agree to life in prison without parole as to the murder count and a concurrent life term in prison as to the robbery count. Id. at 34-35. Noting the seriousness of the plea, the trial court expressed concern about making sure the plea was freely and voluntarily entered with full knowledge of the consequences. Id. at 35. Defense counsel noted that Petitioner was a juvenile at the time of the offenses, but was no longer a juvenile. Id. The judge stated that prior to sentencing he would order a pre-sentence investigation and a Department of Justice PDR

---

[2]The Motion to Strike did not affect the ability of the State to seek the death penalty. Fla. R. Crim. P. 3.202(a) provided: "Failure to give timely written notice under this subdivision does not preclude the state from seeking the death penalty."

(pre-dispositional report). _Id._ at 36. Petitioner stated she understood what the judge and lawyers were talking about. _Id._

Petitioner was then placed under oath and questioned by the court. _Id._ Petitioner stated that she was 19 years old, had gone to the ninth grade in school, and could read, write and understand English. _Id._ at 37. Petitioner stated that she had been treated for mental illness or emotional disability by a woman from the Ruth Cooper Center about a year before, and was given Celexa and Risperdal for the depression. _Id._ Petitioner denied being under the influence of any kind of substance and agreed that she had read the plea form. _Id._ at 38. Petitioner stated she understood her constitutional rights, and understood that, by entering a plea, she was giving up those rights in return for the agreed-upon sentence. _Id._ The Court nonetheless went over the individual rights with Petitioner, and Petitioner stated she understood the rights. _Id._ at 38-39. Petitioner stated she had discussed these rights with her attorney and was satisfied with the advice of her attorney. _Id._ at 39. Petitioner affirmed that her attorney had done everything she had asked, had presented and reviewed all the evidence counsel believed the State had against Petitioner with her, and had discussed witnesses and all the defenses Petitioner thought she might have. _Id._ at 39-40. Petitioner stated that her attorney gave "her advice about what she thought [Petitioner's] chances were in this case" and was "satisfied with everything that [counsel] told [her]." _Id._ at 40. Petitioner also testified that

she was not threatened or promised anything to induce her to plead guilty.  Id. at 40-41.

In response to questions from the prosecutor, Petitioner stated that she believed entering a plea was in her best interest, that she understood that for a capital offense there were only two possible penalties, death or life, and that the court would decide the penalty.  Id. at 41.  Petitioner also agreed with the prosecutor that she understood by entering the plea she would be relieving herself from the chance of being sentenced to death by the court.  Id.  Petitioner identified her signature on the plea form, and stated she had no questions regarding the plea form.  Id. at 41.  Petitioner stated she understood that by entering the plea she would be waiving all the rights the court went over, and there would be nothing for her to appeal.  Id.  Petitioner stated that she understood that this meant that she could not come back and appeal after she was incarcerated, and stated she understood that she would spend the rest of her "natural life in a facility."  Id. at 42-43.

The Court then asked the prosecutor to set forth a factual basis for the guilty plea.  The prosecutor stated that if the case were to go to trial the State would prove the following: On November 10, 2001, Petitioner and her friend Theresa Robinson decided to rob Paul Townsend, and agreed they would need a third person to control Townsend.  Id. at 43. Petitioner and Robinson invited Hershall Upshaw to join them in the robbery, and Upshaw

agreed.  Id.  The three met on November 10, 2001, and Upshaw provided two firearms, giving one to Petitioner.  Id. at 43-44. The three persons then drove past Townsend's house in Upshaw's vehicle, and then went to a restaurant.  Id. at 44.  At the restaurant the three had a conversation during which Petitioner stated that they were going to "rob Mr. Townsend and kill Mr. Townsend."  Id.  The three persons then got back into Upshaw's car, drove back to Townsend's house, and parked across the street.  Id. Pursuant to their plan, Petitioner was the first to approach the house, because of "her relationship or friendship with Townsend." Id.  Petitioner knocked on the door and entered the house; and, shortly thereafter the other two persons entered the house.  Id. Townsend was taken to the ground by Upshaw, and they demanded Townsend's money and/or ATM cards and PIN numbers.  Id. at 44-45. Petitioner bound Townsend's ankles and blindfolded him.  Id. at 45. Robinson left the house to try to use the ATM cards to get money, but was unsuccessful and came back.  Id.  A camcorder and a couple of VCRs were taken from the house, and Robinson left the house going to Upshaw's vehicle.  Id. Upshaw was leaving the house when he heard three gunshots.  Id.  Hill was standing over Townsend's body, having shot and killed him.  The three persons then left the house, purchased some liquor and proceeded to some bars.  Id.  When asked by the judge if she shot Townsend, Petitioner responded "yeah."

The prosecutor added that after leaving the house the three persons went to another ATM and were able to successfully withdraw "some $1,000." Id. at 46. The prosecutor further proffered that Petitioner voluntarily went to the Sheriff's Office to give a statement, and she did a walk-through video of the incident, although she was not necessarily "completely 100 percent truthful" at the time. Id. at 46.

The court found that Petitioner was "competent, alert and able to tender" the plea. Id. at 47. Further, the court determined that Petitioner's plea was "done . . . freely and voluntarily with the full knowledge and the consequences." Id. The prosecutor then explained to Petitioner that, although she would be sentenced at a later time, because the judge accepted the plea she would not be allowed to withdraw it, and Petitioner said she understood. Id. at 48. The prosecutor stressed that during this interim of time she may have a chance to talk with other people about her plea or think about her plea, but once the judge accepts the plea she will not be able to change it. Id. In response to the prosecutor's questions about whether she still wanted to pled guilty to the two charges, Petitioner responded "yes." Id.

Subsequently, on May 28, 2003, Petitioner appeared before the court for sentencing. Id. at 53-77. The court acknowledged that it had received and reviewed the report from the Florida Department of Juvenile Justice, the sentencing summary forms and the presentence investigation. Id. at 59. In response to whether

there were any additions or corrections to the documents, defense

counsel offered the following:

BOWDEN: Briefly, Judge, there are no corrections to it.
However, I was a little taken back. It really reads like
a probable cause sheet.

THE COURT: Which one?

MS. BOWDEN: The presentence investigation report. I have
no objections to the sentencing scoresheet, nor to the
recommendations on the presentence report.  I would like
to add that Ms. Hill has this extensive contact
throughout her life with various agencies. There's no
reflection of anything regarding her life in this
presentence investigation report.  There's a very brief
mention that her mother had reported claims of sexual
abuse by the victim. That has been an overriding concern
of Ms. Hill's.  It has been documented throughout the
discovery, in various records, contacts that she has with
different state agencies, through the juvenile detention
facility, SWFAS, through Ruth Cooper Center.
Additionally, Ms. Hill has seen Doctor Murrell Mint who
in addition to performing a competency evaluation, she
did find her competent and sane, however she also found
that she suffered from post-traumatic stress disorder as
a result of this alleged molestation by Mr. Townsend and
we do feel that it is important to notify the Court of
this and to have this made part of the record that this
has been –

THE COURT: It's no mystery —

MS. BOWDEN: Correct.

THE COURT: — the way her life has been probably since
she's been old enough to accumulate a record and
understanding the way that is, it's no mystery to me as
to how she's come to this terrible end.

MS. BOWDEN: Yes, sir.

THE COURT: There's nothing I can do about it.  The law is
what the law is.

MS. BOWDEN: Correct.

THE COURT: And while it's extremely sad, you have to live with what you do.

MS. BOWDEN: Yes, sir. I was just, I guess, disappointed that nothing was reflected in what's a presentence investigation report.

THE COURT: Well, it's obvious when you look at her record — and I'm not talking about somebody's opinion in here —

MS. BOWDEN: Uh-huh.

THE COURT: But, I mean, it's a downward spiral from the very, very beginning, all the way down to the fact that now she's convicted of a murder.

MS. BOWDEN: Yes.

THE COURT: I mean, it's amazing. I mean, you start back in October of '66 and it goes on and on —

MR. KANUSEK: October of '96.

THE COURT: What did I say?

MR. KUNASEK: '66.

THE COURT: '96, October the 23rd of '96 is the first one. And you see the lifestyle and the life principles that she's had to live by. I mean, it's just not a mystery. In fact, you know, if you looked at it somewhere around just after, you know, just after that, I mean, it's just a downward spiral and here we are.

MS. BOWDEN: Yes, sir.

THE COURT: Anything else?

MS. BOWDEN: I have nothing further.

Id. at 59-61.  Thereafter, pursuant to the plea agreement, Hill was sentenced to life imprisonment for First Degree Murder and life imprisonment for Robbery-Possessing a Firearm, the sentences to run concurrently.  Id. at 62-63.

On June 17, 2003, Petitioner filed a direct appeal. <u>Id.</u> at 78. Appointed appellate counsel filed an <u>Anders</u> Brief[3] asserting no arguable error could be found. Exh. 2. In pertinent part, appellate counsel stated that pursuant to Florida Rule of Appellate Procedure 9.140 Petitioner was only allowed to appeal her *nolo contendere* plea as "an involuntary plea, if preserved by a motion to withdraw plea." Fla. R. App. P. 9.140(b)(2)(A)(ii)c. Appellate counsel correctly stated that there was no record of Petitioner having filed a motion to withdraw her plea. Ex. 2 at 5.

Hill, as permitted by the appellate court, filed a *pro se* letter brief setting forth "Appellant's Argument Supplementing <u>Anders</u> Brief." Exh. 4. Hill asserted that she believed the courts overlooked the fact that she too was a victim who suffered mental, emotional, sexual, and physical abuse by the deceased victim in the case, and that her actions were the result of hurt and anger rarely understood and almost never taken seriously. Petitioner stated that while in jail pending trial she was seen by a specialist in psychology and was diagnosed with post-traumatic depression. She further stated that the money from the robbery meant nothing to her, and that "it was my mind & emotions that made me think killing him is something I NEEDED to do." Petitioner stated that she was mentally disturbed while in the free world, without understanding why, and was always angry with everyone. Petitioner further wrote

_____

[3]<u>Anders v. California</u>, 386 U.S. 738 (1967).

that she had nightmares of the deceased abusing her all over again, that he had caused her physical pain, and that she thought the pain would stop if she hurt him and put him in a pain that matched her own. Petitioner stated that people were overlooking that this would never have happened if the deceased had not abused her. Petitioner also questioned how she could look forward to helping herself and becoming a positive person when sentenced to life imprisonment, and stated that it did not take a lifetime to learn the difference between right and wrong. Petitioner said that her record showed she was not a violent person or a threat to society because her previous charges were all drug related. Petitioner stated she felt she was sentenced to two concurrent life sentences because the victim had been killed with a gun, and if she had used a different weapon the sentence would have been lower. Finally, Petitioner stated that she felt the courts overlooked the fact that she was seventeen years old when the crime occurred, she had been abused by the deceased victim, the harshness of the sentence, and that she had been intoxicated during the crime.

The State filed a <u>Anders</u> Brief With Additional Argument in response. Exh. 5. On February 20, 2004, the appellate court *per curiam* affirmed Hill's conviction and sentence, without opinion. Exh. 6; <u>Hill v. State</u>, 871 So.2d 224 (Fla. 2d DCA 2004). The mandate issued on March 22, 2004. Exh. 7.

On February 22, 2005, Petitioner filed a *pro se* Motion for Post-Conviction Relief pursuant to Florida Rule of Criminal Procedure 3.850, in which she alleged: (1) trial counsel rendered ineffective assistance by misleading/misinforming and/or coercing her into entering into a guilty plea; and (2) trial counsel was not qualified as death penalty lead counsel pursuant to Florida Rule of Criminal Procedure 3.112(c). Exh. 8. More specifically as to the ineffectiveness of counsel, Petitioner alleged that her attorney informed her that if she was found guilty by the jury she <u>would</u> receive the death penalty. Petitioner claimed that she wanted to go to trial and questioned her attorney about the fact that she was 17 years old at the time of the offense and was diagnosed with post-traumatic stress disorder. Counsel informed Petitioner that these facts did not matter, and if she was convicted she would receive the death penalty, unless she accepted the plea. Petitioner asserted this was highly misleading because in comparison to other cases and crimes, her age, the sexual abuse and diagnosis of post-traumatic stress disorder alone would prevent the imposition of the death penalty on a proportionality review. Petitioner stated that she pled guilty in order to avoid the death penalty. Petitioner further stated that counsel misled Petitioner into believing she would receive or was qualified for the death penalty; that if her attorney had properly investigated and researched the case, she would have found Petitioner did not qualify for the death sentence because it would have been

disproportionate; that Petitioner had numerous statutory and non-statutory mitigators which far out-weighed the aggravators, including her age at the time of the offense (17 years old), the record of sexual abuse by the deceased victim, her diagnosis of post-traumatic stress disorder, her mother's incarceration, her abuse of drugs and alcohol, her disruptive home life, her poverty and lack of education, her abandonment by her father, her cooperation with the police, her amenability to rehabilitation, the substantial impairment to her capacity to appreciate the criminality of the conduct, her positive personal traits, her remorse, and her good conduct in jail. See generally Exh. 8.

The State, after being directed by the post-conviction trial court, filed a Response to Motion for Post-Conviction Relief asserting that the record demonstrated conclusively that post-conviction relief was not warranted. Exh. 10. The State relied upon Stano v. State, 520 So.2d 278 (Fla. 1988), which in turn relied upon Strickland v. Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985).

On August 31, 2005, the post-conviction trial court denied Petitioner's Rule 3.850 motion without an evidentiary hearing. Exh. 11. In pertinent part, the trial court held:

> The transcripts and exhibits together demonstrate that the Defendant was facing the death penalty and that her plea was freely and voluntarily entered. The court notes that although the Defendant was a juvenile at the time she committed this crime, the Supreme Court had not yet issued its ruling prohibiting the imposition of the death penalty against someone who was a minor when their crime

was committed. At the time, the Defendant was in jeopardy of her life.

Id. at ¶3. The court further "adopts the arguments set forth by the State in its Response . . . as its own." Id. at ¶4.

Petitioner appealed the post-conviction trial court's August 31, 2005 order, including the failure to hold an evidentiary hearing. Exh. 12. The appellate court *per curiam* affirmed the trial court's order on February 24, 2006. Exh. 14. Petitioner's request for a rehearing was denied and mandate issued on May 11, 2006. Exhs. 15-16.

## II.

On May 31, 2006, Petitioner filed the timely[4] Petition for Writ of Habeas Corpus with this Court. Petitioner raises the same two grounds for relief raised in her Rule 3.850 motion. In Ground One Petitioner asserts that her trial counsel rendered ineffective assistance by misleading, misinforming and/or coercing Petitioner into accepting a plea, resulting in an involuntary and unknowing guilty plea. Petition at 5. In Ground Two, petitioner alleges that her attorney was ineffective because she was not qualified as a death lead counsel pursuant to Florida Rule of Criminal Procedure 3.112(c), was not knowledgeable in death penalty cases, and provided the mis-advise raised in Ground One. Petition at 7.

---

[4]Respondent concedes that the Petition was timely filed, Response at 4, fn. 2, and the Court agrees.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001). Under AEDPA, the standard of review is greatly circumscribed and highly deferential to the state courts. Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007)(citation omitted). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). The following legal principles apply to this case.

## A. Deference to State Court Decision

A federal court must afford a high level of deference to the state court's decision. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state

court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. <u>Blankenship v. Hall</u>, 542 F.3d 1253, 1271 (11th Cir. 2008); <u>Ferguson</u>, 527 F.3d at 1146; <u>Wright v. Sec'y Dep't of Corr.</u>, 278 F.3d 1245, 1253-54 (11th Cir. 2002).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)). A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. <u>Brown</u>, 544 U.S. at 141; <u>Mitchell</u>, 540 U.S. at 15-16. It is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the

facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable," a substantially higher threshold. Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted), Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004).

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). A factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker

v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted).  An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

### B.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d) and Strickland v. Washington, 466 U.S. 668 (1984).  Newland v. Hall, 527 F.3d 1162, 1183-84 (11th Cir. 2008). The Strickland test applies to challenges of guilty pleas, as well as to convictions by jury.  Hill v. Lockhart, 474 U.S. 52, 58-59 (1985).

In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance.  First, Petitioner must show that counsel's representation was deficient, i.e., that it fell below an objective standard of reasonableness under prevailing professional norms.  In the guilty plea context, the first prong of Strickland requires that the petitioner show that her plea was not voluntary because she received advice from counsel that was not within the range of competence demanded of attorneys in criminal cases.  Scott v. U.S., No. 08-13433, 2009 WL 1143179 *1 (11th Cir. April 29, 2009)(citing

<u>Hill</u> 106 S.Ct. at 369-70). Counsel owes a lesser duty to a client who pleads guilty than to one who goes to trial, and need only provide the client with an understanding of the law in relation to the facts in order that the client may make an informed and conscious choice between entering a guilty plea and going to trial. <u>Wofford v. Wainwright</u>, 748 F.2d 1505, 1508 (11th Cir. 1984). Counsel is required to make an independent examination of the facts, circumstances, pleadings and laws involved, and then offer her informed opinion as to the best course to be followed in protecting the interests of the client. <u>Id.</u> Collateral relief is only available to a petitioner if she "prove[s] serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act." <u>McMann v. Richardson</u>, 397 U.S. 759, 774 (1970).

Second, Petitioner must show that the attorney's deficient performance prejudiced her, i.e., that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Petitioner must demonstrate that "counsel's constitutionally ineffective performance affected the outcome of the plea process, meaning the defendant must show 'a reasonable probability that, but for counsel's errors,' he would have entered a different plea." <u>Scott</u> (quoting <u>Hill</u> at 370). In evaluating whether there is a reasonable probability that a petitioner would have insisted on going to trial, the court considers whether petitioner had available a

defense that would likely have borne fruit at trial.  <u>Hill</u>, 474 U.S. at 59.

**III.**

**A.  Ground One**

In her first ground for relief, Petitioner claims that trial counsel was ineffective "for misleading, misinforming, and/or coercing Petitioner to accept [a] Plea."  Petition at 5.  In essence, Petitioner argues that because counsel failed to discuss the proportionality review and properly evaluate that her age and her posttraumatic stress were mitigators, Petitioner's plea was not knowing and voluntary because she contends that it was unlikely that Petitioner would have received the death penalty if she proceeded to trial.  For the reasons set forth below, the Court finds that this ground is without merit.

As an initial matter, the Court rejects Respondent's argument that Petitioner's entry of the *nolo contendere* plea waives her claims of ineffectiveness of counsel "because such does not implicate the validity of the plea itself."  Response at 10.  The law is well-settled.  As the court in <u>Scott v. Wainwright</u>, 698 F.2d 427 (11th Cir. 1983) stated:

> The constitutional standards for a collateral attack on a guilty plea grounded on ineffective assistance of counsel are fairly well established. Once a plea of guilty has been entered, nonjurisdictional challenges to the conviction's constitutionality are waived, and only an attack on the voluntary and knowing nature of the plea can be sustained.  The guilty plea cannot have been knowing and voluntary, however, if a defendant does not

receive reasonably effective assistance of counsel in connection with the decision to plead guilty, because the plea does not then represent an informed choice. Counsel must be familiar with the facts and the law in order to advise the defendant of the options available. The guilty plea does not relieve counsel of the responsibility to investigate potential defenses so that the defendant can make an informed decision. Counsel's advice need not be errorless, and need not involve every conceivable defense, no matter how peripheral to the normal focus of counsel's inquiry, but it must be within the realm of competence demanded of attorneys representing criminal defendants.

Id. at 429 (citations omitted). See Tollett v. Henderson, 411 U.S. 258, 267 (1973); Hill v. Lockhart, 474 U.S. 52 (1985).

Petitioner's claim in this case clearly implicates the validity of the guilty plea itself. Petitioner claims that trial counsel failed to advise her of and explain "the proportionality review of the death penalty," failed "to inform the Petitioner of her many mitigators" and failed "to inform Petitioner that a jury would determine if she qualified for the death penalty." Id. Petitioner asserts that counsel misadvised her that her age at the time of the crime, and her diagnosis by the court appointed mental health expert of post-traumatic stress disorder stemming from sexual abuse by the victim were not relevant in determining the application of death penalty. Id. at 6. In fact, Petitioner states that "counsel informed the Petitioner that if she did not accept the plea she would get the death penalty regardless of her age or diagnosis." Id. Petitioner further alleges that she would have proceeded to trial if not for counsel's ineffectiveness. Id.

Since there has been no waiver by Petitioner, the Court must examine the state court decision on the Rule 3.850 motion in light of the AEDPA standards summarized above. The record reflects that the state courts applied the clearly determined federal law as determined by the Supreme Court of the United States. As noted earlier, the post-conviction judge cited the Florida Supreme Court decision of <u>Stano v. State</u>, 520 So. 2d 278 (Fla. 1988), which in turn relied upon <u>Strickland</u> and <u>Hill</u>. Therefore, the proper standard for ineffective assistance of counsel was applied by the state court. The court also determined that no evidentiary hearing was necessary because the record conclusively refuted Petitioner's claims. This finding is consistent with federal law, which also holds an evidentiary hearing is unnecessary if the record refutes a petitioner's claims. <u>Schriro v. Landrigan</u>, 550 U.S. at 474 ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")

Thus, the Court must determine whether the state court unreasonably applied the <u>Strickland</u> and <u>Hill</u> standard to the facts of Petitioner's case. In other words, Petitioner must demonstrate that the state court's decision was "objectively unreasonable" not just incorrect or erroneous. <u>Williams v. Taylor</u>, 529 U.S. at 413. The fact that Petitioner may have plead guilty to avoid the death penalty does not render her guilty plea involuntary, even if the death penalty is later determined to be inapplicable to the

situation.[5]  Brady v. United States, 397 U.S. 742 (1970).  Rather,
the state court was entitled to rely upon Petitioner's statements
under oath that her attorney had fully advised her of all the facts
and defenses and that Petitioner was satisfied with the advice
provided by her counsel.

Petitioner's age of 17 at the time of the crime and her
suffering from posttraumatic stress disorder, although clearly
statutory mitigators for a capital felony, were not defenses to a
charge of premeditated murder.  Fla. Stat. § 921.141(6).  Thus,
counsel's conclusion that Petitioner's age was "irrelevant" was not
entirely incorrect.  Further, Petitioner's speculation that her
case would not survive a proportionality review by the Florida
Supreme Court is not sufficient to render counsel's performance
ineffective.  At the time of Petitioner's guilty plea, the Florida
Supreme Court had indeed found the death penalty for someone who
was seventeen at the time of the offense to be disproportionate
under certain circumstances.  E.g., Curtis v. State, 685 So. 2d
1234 (Fla. 1996); Urbin v. State, 714 So. 2d 411 (Fla. 1998);
Livingston v. State, 565 So. 2d 1288 (Fla. 1988); Terry v. State,
668 So. 2d 954 (Fla. 1996); Bell v. State, 841 So. 2d 329 (Fla.
2002); Snipes v. State, 733 So. 2d 1000(Fla. 1999).  However, the
Florida Supreme Court had upheld the death penalty in at least two

_____

[5]Two years after Petitioner's guilty plea, the United States
Supreme Court held that the Eighth Amendment precluded execution of
someone under eighteen years old at the time of the offense.  Roper
v. Simmons, 543 U.S. 551 (2005).

cases involving a seventeen year old defendant. <u>Bonifay v. State</u>, 680 So. 2d 413 (Fla. 1996); <u>LeCroy v. State</u>, 533 So. 2d 750 (Fla. 1988).

Here, the record reveals in addition to the aforementioned mitigators, Petitioner's case raised significant aggravators. Petitioner clearly expressed an intent to kill the victim prior to the robbery, Petitioner had bound and blindfolded the victim in the house, and Petitioner personally shot the victim after the robbery, while he remained bound and blindfolded, and after her two accomplices had left the house. Thus, the court concludes that an objectively competent lawyer could have opined that, despite the above mitigators, Petitioner would be convicted as charged, sentenced to death, and have the death penalty affirmed.

Petitioner does not allege that counsel failed to investigate her background, or was unaware of the potential mitigators in her case. <u>Chandler v. U.S.</u>, 218 F.3d 1305, 1315 (11th Cir. 2000). In fact, counsel apprised the court at sentencing as to Petitioner's unfortunate family and social history. While the failure to consider such mitigators during a penalty phase may sustain a finding that defense counsel was ineffective,[6] the Court, despite

---

[6]Under Fla. Stat. § 921.141 (2001), if a defendant is found guilty of a capital offense, a separate evidentiary hearing is held before the trial judge and jury to determine his sentence. Evidence may be presented on any matter the judge deems relevant to sentencing and must include matters relating to certain legislatively specified aggravating and mitigating circumstances. Both the prosecution and the defense may present argument on
(continued...)

conducting an exhaustive review of Supreme Court precedent, has been unable to locate binding legal precedent deeming counsel ineffective for failing to discuss each and every mitigator or explain the proportionality review in a death penalty case to a defendant considering a plea of life imprisonment in a capital case. As noted by the state court in sentencing Petitioner, the court had the option of only two sentences in a capital case, death or life imprisonment. The court sentenced Petitioner to life imprisonment, despite being made aware of the presence of these various mitigators prior to sentencing. Consequently, based upon a review of the record the Court finds that the state court decisions were neither contrary to, nor an unreasonable application of, the clearly established principles or an unreasonable determination of the facts.

### B. Ground Two

In Ground Two, Petitioner claims that trial counsel was not qualified as death penalty lead counsel in advising Petitioner to accept a guilty plea. Petition at 7. In particular, Petitioner argues that her trial counsel was not death qualified and "was not knowledgeable in death penalty cases," which resulted in counsel's misadvising and misinforming Petitioner" as to the death the penalty. Id. In her Rule 3.850 Motion, Petitioner referenced the

---

[6](...continued)
whether the death penalty shall be imposed.

fact that trial counsel did not meet the provisions of Florida Rule of Criminal Procedure 3.112(c), which establishes the minimum standards for attorneys who are appointed in capital cases. Exh. #8.

Respondent responds that Hills' plea waives Petitioner's claim regarding counsel's general competency. Response at 18. Further, Respondent submits that to the extent that Petitioner contends counsel failed to meet the minimum state law qualifications set forth Rule 3.112(c) as set forth in her Rule 3.850 motion, the subject Rule did not become effective until <u>after</u> Petitioner's case. <u>Id.</u> at 19. Further, Respondent argues that Petitioner's claim that counsel lacked experience does not equate to counsel being incompetent. <u>Id.</u>

Rule 3.112(c) adopted by the Florida Supreme Court on October 28, 1999 was originally limited to capital cases involving indigent defendants, where the services of the public defender were not available. <u>In re Amendment to Florida Rules of Criminal Procedure-Rule 3.112 Minimum Standard for Attorneys in Capital Cases</u>, 759 So.2d 610 (Fla. 1999). Subsequently, on February 21, 2002, the standards were extended to apply to public defenders who represent defendants in capital cases, as well as private counsel retained to represent capital defendants. <u>In re Amendment to Florida Rules of Criminal Procedure-Rule 3.112 Minimum Standard for Attorneys in Capital Cases</u>, 820 So.2d 185 (Fla. 2002). The Court notes that counsel was appointed to represent Petitioner on December 21, 2001,

at which time Petitioner was not charged with a capital offense. Although Petitioner was indicted on April 10, 2002 of First Degree Murder, the state did not file its Notice of Intent to Seek the Death Penalty until April 10, 2003, <u>after</u> the date of the Rule was extended to the public defender.

To the extent that Petitioner relies upon Rule 3.112(c), the claim is not cognizable in a federal habeas action since it is a violation of state law. Additionally, while the inexperience of counsel may be a factor that contributes to a finding of ineffective assistance of counsel, it is not in itself enough to establish a lack of effective counsel. <u>U.S. v. Kelley</u>, 559 F.2d 399, 401, (5th Cir.), <u>cert. denied</u>, 434 U.S. 1000 (1977).[7] Indeed, an attorney can render effective assistance of counsel even if he or she has had no prior experience in criminal advocacy. Whether a defendant has been afforded the right to counsel depends on whether the attorney is reasonably likely to render and does render reasonably effective assistance, not on whether counsel has an extensive background in criminal defense work. <u>Id.</u>

Accordingly, it is now

**ORDERED:**

1. The Petition for Writ of Habeas Corpus is **DENIED**.

---

[7]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

2.  The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE AND ORDERED** in Fort Myers, Florida, on this   28th   day of July, 2009.

JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record